UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE D BOYS, LLC,

    Plaintiff,                                            Civil Action No. 13-cv-11397

vs.                                                    HON. BERNARD A. FRIEDMAN

MID-CENTURY INSURANCE
COMPANY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND ENTRY OF FINAL JUDGMENT ON THE
APPRAISAL AWARD, INCLUDING INTEREST**

This matter is presently before the Court on plaintiff's motion for summary judgment and entry of final judgment on the appraisal award, including interest pursuant to M.C.L. § 500.2006 [docket entry 21]. Defendant has filed a response in opposition and plaintiff has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs. For the following reasons, the Court shall grant the motion.

**I.  Background**

This case deals with an insurance dispute regarding the amount of roof damage that a windstorm caused to plaintiff's apartment buildings. Plaintiff owns the "Philamer Apartments," which are located in Royal Oak, Michigan, and comprise 10 separate buildings designated by letters A through J. Plaintiff alleges that a windstorm on March 15, 2012, caused roof damage to Buildings J, C, and D. On March 20, 2012, plaintiff filed a claim as to Building J under the insurance policy it had with defendant. Plaintiff subsequently submitted to defendant claims for roof damage to Buildings C and D, citing the March 15, 2012, windstorm as the cause

of damage. Defendant acknowledged that the windstorm caused damage to Building J, but denied that the windstorm caused roof damage to Buildings C and D.

Because the parties were unable to agree on the extent of the roof damage, plaintiff demanded an appraisal pursuant to M.C.L. § 500.2833(1)(m) to determine the amount of loss sustained by buildings J, C, and D. Each party appointed its own appraiser, but the two appraisers never selected an impartial umpire as required by M.C.L. § 500.2833(1)(m) because they disagreed about which buildings would be subject to appraisal. Plaintiff's appraiser maintained that all three buildings should be appraised because they were all damaged during the March windstorm. Defendant's appraiser argued that the appraisal should be limited to Building J alone, arguing that Buildings C and D raised "coverage issues" that could not be decided by the appraisal panel. To break the impasse, plaintiff filed the instant action on March 28, 2013.

On October 24, 2013, in granting plaintiff's motion for partial summary judgment, the Court found that the damage to Buildings C and D posed issues of "scope-of-loss," not "coverage" issues, and thus ordered the parties to appraisal and appointed Judge Dalton Roberson to serve as the impartial umpire. On August 8, 2014, Judge Roberson made the following appraisal award:

**Replacement Cost:** $900,000

**Actual Cash Value:** $720,000

**Loss of Rent:** $173,000

Judge Roberson and plaintiff's appraiser signed the appraisal award, rendering the award binding as to the amount of loss. Plaintiff now moves for summary judgment and entry of final judgment on the appraisal award and seeks statutory interest pursuant to M.C.L. § 500.2006. In response, defendant argues that there are genuine disputes of material facts that

preclude entry of summary judgment in favor of plaintiff and that the appraisal award should be set aside for "manifest error."

## II.  The Appraisal Award

### A.  *Legal Standard*

The appraisal process challenged by defendant is delineated in M.C.L. § 500.2833(1)(m), which states:

> That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by the insured and the insurer.

Under this statutory appraisal process, the umpire's award, when signed by one of the parties, becomes binding as to the amount of loss. *Id.*  In this way, the statutory appraisal process is analogous to common law arbitration and is a "'substitute for judicial determination of a dispute concerning the amount of loss,' which is a 'simple and inexpensive method for the prompt adjustment and settlement of claims.'" *Auto-Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482, 486 (1991) (quoting *Thermo-Plastics R & D, Inc. v. Gen. Accident Fire & Life Assurance Corp., Ltd.*, 42 Mich. App. 418, 422 (1972)); *see also Auto-Owners Ins. Co. v. Allied*

3

*Adjusters & Appraisers, Inc.*, 238 Mich. App 394, 399 (1999) ("The statutory appraisal process is a substitute for the judicial determination of disputes over the amount of losses to be paid by insurers."). As such, "[j]udicial review of the [umpire's] award *is limited* to instances of bad faith, fraud, misconduct, or manifest mistake." *Kwaiser*, 190 Mich. App. at 486 (emphasis added). Because "[a]rbitration is meant to be a quick and final resolution by which parties are bound[,]" *Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc.*, 819 F.2d 639, 642 (6th Cir. 1987), "there are great objections to any general interference by courts with [these] awards." *Davis v. Nat'l Am. Ins. Co.*, 78 Mich. App. 225, 234-35 (1977).

To challenge an appraisal award, a party must make a motion to vacate or modify the award within 91 days of the date of the award. *See* M.C.R. 3.602(J)(3); *see also Dubuc v. Dep't of Envtl. Quality*, No. 298712, 2011 WL 2732559, at *1 (Mich. App. July 14, 2011) (reasoning that the procedural aspects of M.C.R. 3.602 apply to common law arbitration). The party moving to vacate or modify an appraisal award has the burden of establishing the grounds on which to set it aside. *Allied Adjusters & Appraisers, Inc.*, 238 Mich. App. at 399. For an award to be set aside for "manifest mistake," the "mistake must be of such a character that the appraiser would have corrected it had it been called to his or her attention." 15 Couch on Ins., 3d § 213:66; *see also Lakewood Mfg. Co. v. Home Ins. Co. of New York*, 422 F.2d 796, 798 (6th Cir. 1970). "A mistake of judgment is not such a manifest mistake." *Id.* An award will not be set aside for manifest mistake unless the mistake, whether legal or factual, is apparent "on the face of the award." *Detroit Auto. Inter-Ins. v. Gavin*, 416 Mich. 407, 443 (1982).

Michigan courts have generally followed summary judgment standards to determine whether an appraisal award should be vacated or modified. *See, e.g., Hartford Ins. Co. v. Miller*, Nos. 04-10314, 05-10092, 2006 WL 2844124, at *7 (E.D. Mich. Sept. 30, 2006)

(citing *Kwaiser*, 190 Mich. App. at 482). This standard requires the party challenging the appraisal award to include evidence establishing a genuine issue of material fact as to bad faith, fraud, misconduct, or manifest mistake that infects the process. *Id.* A fact is "material" if its resolution affects the outcome of the lawsuit. *See Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Irrelevant factual disputes do not create genuine factual disputes. *See St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). Accordingly, a factual dispute that "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. U.S.*, 991 F.2d 292, 296 (6th Cir. 1993).

**B.  *Application***

Defendant does not frame its argument in terms of the appropriate standard of review for vacating an appraisal award. Nevertheless, it appears the main thrust of defendant's argument against entering summary judgment in favor of plaintiff is that the umpire made a "manifest error" that requires the Court to set aside the appraisal award. This argument, however, is untimely and thus has been waived. Defendant had 91 days from the date of the appraisal award to file a motion. Instead of making such a motion, defendant first raised this "manifest error" argument in its response to plaintiff's motion for summary judgment. In this district, "a response or reply to a motion must not be combined with a counter-motion." *Baser v. Dept. of Veterans Affairs*, No. 13-cv-12591, 2014 WL 4897290, at *6 (E.D. Mich. Sept. 30, 2014). Accordingly, defendant did not timely file a motion to vacate the appraisal award and has waived this argument.

Even if the Court were to construe defendant's response to plaintiff's motion for summary judgment as a timely motion to vacate the appraisal award, plaintiff is still entitled to summary judgment because defendant has not established a genuine issue of material fact *as to manifest mistake* within the appraisal process.  Instead of establishing a genuine dispute of material fact that speaks to manifest mistake within the appraisal process, defendant simply lists seven questions, without further explanation, that purportedly illustrate disputed facts that preclude entry of summary judgment.  The Court finds this list of questions entirely unpersuasive.  None of these questions evidences manifest mistake, let alone *any* mistake in the process.  For example, four of the seven questions[1] argue that Judge Roberson committed "manifest error" because his award did not list the individual components that gave rise to his final lump sum amounts for replacement costs and actual cash value.  However, Michigan law only requires that appraisal awards state valuation determinations for the categories of coverage under the policy and has made clear that further itemization in each category is not necessary. *See Arkin Distrib. Co. v. Am. Ins. Co.*, 85 Mich. App. 359, 367 (1978).  Judge Roberson made lump sum awards in the categories of defendant's coverage—replacement cost and actual cash value—which was all that was required of him under Michigan law.  As such, defendant's itemization argument does not evidence a manifest mistake in the appraisal process that would warrant vacating the appraisal award.

Of defendant's remaining three questions, only one merits the Court's discussion.[2] Defendant suggests that Judge Roberson did not consider defendant's appraiser's report ("the

---

[1] Specifically, defendant asks: "(1) What, if any, portion of the $900,000 replacement cost is for replacing damage caused by windstorm, and what portion of the $900,000 replacement cost award is for repairing damage caused by wear and tear and deterioration?; (2) What portion of the $900,000 replacement cost award is for abatement of asbestos?; (3) What portion of the $900,000 replacement cost is for Building J, for Building C, or for Building D?; and (4) Is any of the replacement cost award for damage to Building J?" Def.'s Resp. at 8.
[2] The following two questions do not raise a factual dispute evidencing a manifest mistake in the appraisal process: "(5) At what point did D-Boys present a 'satisfactory Proof of Loss[']? Was it in July, 2012?  Was it in 2014?  Was

6

Sheppard Engineering Report") and implies that this evidences a manifest mistake. Def's Resp. at 8. Defendant provides no factual basis to support the assertion that Judge Roberson did not consider the report, nor does defendant explain how this would evidence manifest mistake in the appraisal process. Even more baffling to the Court is the fact that the only piece of evidence defendant provides that is remotely related to its "Sheppard Engineering Report argument" actually refutes this argument. Defendant's own exhibit of its appraisal summary clearly shows that the Sheppard Engineering Report was included with the materials submitted to Judge Roberson during appraisal. Def.'s Resp. at Ex. 3. Accordingly, it is certainly not apparent "on the face of the award" that Judge Roberson did not consider this report. Defendant's position with regard to this report simply does not evidence a manifest mistake.

Scattered throughout the remainder of defendant's brief is a multitude of cursory arguments, none of which persuades the Court to vacate the appraisal award due to manifest mistake. These arguments appear to boil down into two main categories. In the first category, defendant argues that "manifest error" occurred because the appraisal panel inappropriately decided an issue of coverage by including the damages to Buildings C and D in the final award.[3] This argument is a second attempt by defendant to raise previously argued issues. The Court already decided this issue in its October 24, 2013, opinion and order, where it held that the damage to Buildings C and D posed issues of "scope-of-loss," not "coverage issues." As such, an appraisal award reflecting damage to Buildings C and D does not constitute a manifest mistake as such an award is in full compliance with the Court's October 24, 2013, opinion and order.

---

it at the time of the appraisal proceedings?" and "(7) Was Plaintiff's failure to give notice of alleged damages to Buildings C and D a violation of the notice provisions of the policy?" Def.'s Resp. at 8.
[3] *See* Def.'s Resp. at 16-18.

The remainder of defendant's arguments can be categorized as arguments that attack the scope and amount of the appraisal award. Defendant makes numerous arguments in this category including that Judge Roberson erred by: (1) "concluding that certain premises were damaged in spite of overwhelming evidence to the contrary"; (2) "awarding extremely large amounts for replacement cost and actual cash value, in spite of contrary evidence, even based upon Plaintiff's own estimates of $120,000, and $638,000"; (3) "awarding an 'across the board' and very small percentage for depreciation"; and (4) rendering an award that does not give enough weight to defendant's appraisal report and engineer's opinion. Def.'s Resp. at 19-21. Defendant, again, does not provide any factual basis to support these assertions, nor does it explain how these assertions constitute a manifest mistake that is apparent "on the face of the award." It is clear to the Court that defendant simply disagrees with the amount of the appraisal award. However, absent a manifest mistake, the umpire's determination of the scope and amount of loss is binding on the parties. *See* Mich. Comp. Laws § 500.2388(1)(m); *see also Allied Adjusters & Appraisers, Inc.*, 238 Mich. App at 399 ("The statutory appraisal process is a substitute for the judicial determination of disputes over the amount of losses to be paid by insurers.").

In sum, defendant's arguments, even when considered together, have failed to establish a genuine issue of material fact as to manifest mistake within the appraisal process. The Court shall therefore grant plaintiff's motion for summary judgment and entry of final judgment on the appraisal award as follows:

**Replacement Cost:**   $900,000

**Actual Cash Value:**   $720,000

**Loss of Rent:**   $173,000

**III. Penalty Interest Pursuant to M.C.L. § 500.2006**

M.C.L. § 500.2006(4) of the Michigan Uniform Trade Practices Act ("MUTPA") provides:

> (4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. The interest shall be paid in addition to and at the time of payment of the loss. If the loss exceeds the limits of insurance coverage available, interest shall be payable based upon the limits of insurance coverage rather than the amount of the loss. If payment is offered by the insurer but is rejected by the claimant, and the claimant does not subsequently recover an amount in excess of the amount offered, interest is not due. Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award.

The Michigan Court of Appeals has interpreted this statutory language and held that "a first-party insured is entitled to 12 percent penalty interest if a claim is not timely paid [within 60 days after receipt of satisfactory proof of loss], irrespective of whether the claim is reasonably in dispute." *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 551 (2007) (citing Mich. Comp. Laws § 500.2006(4)). A proof of loss is satisfactory when it "is sufficient to fully apprise the insurer of insured's claim." *Acme Roll Forming Co. v. Home Ins. Co.*, 31 F. App'x 866, 872 (6th Cir. 2002). Moreover, a proof of loss consists of notice to the insurer of an accident, injury, and a demand for payment under the insurance contract. *See Medley v. Canady*, 126 Mich. App. 739, 744 (1983). Importantly, a disagreement over the amount of loss does not render a proof of loss "unsatisfactory." *See Griswold*, 275 Mich. App. at 564. After receipt of

9

such proof of loss, the insurer has 30 days to "specify in writing the materials which constitute a satisfactory proof of loss," or else M.C.L. § 500.2006(4)'s requirement of "satisfactory proof of loss" is excused. *Id.* at 744-45 (citing Mich. Comp. Laws § 500.2006(3), (4)).

There is no genuine dispute as to when defendant first received satisfactory proof of loss. Both parties agree that defendant first received proof of loss on July 16, 2012, meaning that interest on the appraisal award began to accrue on September 14, 2012. *See* Pl.'s Mot. at 8; *see also id.* at Ex. D (defendant admitting that "[t]he [Claims Representative] received Mr. Holmes['s] estimate of $120,043.34 on July 16, 2012" and that interest would begin to accrue on September 14, 2012). Unsurprisingly, defendant now argues that the proof of loss it received on July 16, 2012, was unsatisfactory because the appraisal award rendered was ultimately much greater than plaintiff's initial claim of $120,043.34. Def.'s Resp. at 24. This argument is neither legally correct nor timely. A disagreement over the amount of loss does not render a proof of loss "unsatisfactory." *See Griswold*, 275 Mich. App. at 564. Moreover, if defendant found the July 16, 2012, proof of loss unsatisfactory, it was required to specify in writing within 30 days of receiving plaintiff's claim which materials would constitute a satisfactory proof of loss. Defendant never made the required specification nor did it ever claim in its denial letter to plaintiff that the estimate was unsatisfactory. *See* Pl.'s Reply at Ex. 3. As such, defendant's argument is unpersuasive.

Plaintiff is entitled to 12 percent penalty interest on the actual cash value of the building loss ($720,000) as stated in the binding appraisal award. Interest on this amount began to accrue on September 14, 2012, 60 days after defendant acknowledges receipt of plaintiff's proof of loss (July 16, 2012). Plaintiff is also entitled to 12 percent penalty interest on the business income loss ($173,000) as stated in the binding appraisal award. Interest on this

10

amount began to accrue on October 8, 2014, 60 days after Judge Roberson rendered his appraisal award (August 8, 2014).

## IV.  Conclusion

For the foregoing reasons,

IT IS ORDERED that plaintiff's motion for summary judgment and entry of final judgment on the appraisal award is granted.

IT IS FURTHER ORDERED that plaintiff is entitled to interest pursuant to M.C.L. § 500.2006 as detailed in this opinion.

IT IS FURTHER ORDERED that defendant's "Motion to Enter a Scheduling Order, Authorize Discovery, Set Date for Pretrial Conference and Trial" [docket entry 27] is denied as moot in light of this opinion.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  February 19, 2015
        Detroit, Michigan